SHAUN KHOJAYAN (#197690)
LAW OFFICES OF SHAUN KHOJAYAN
 & ASSOCIATES, P.L.C.
515 South Flower Street, 19th Floor
Los Angeles, CA 90071
Telephone: (310) 274-6111
Facsimile:  (310) 274-6211
Email: shaun@khojayan.com
Attorney for Defendant Benjamin Meir #1

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

**(HONORABLE CORMAC J. CARNEY)**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>   v.<br><br>BENJAMIN MEIR (#1),<br><br>   Defendant. | Case No.:19-CR-00170-CJC-1<br><br>DEFENDANT BENJAMIN MEIR'S SENTENCING MEMORANDUM<br><br>Date: January 27, 2020<br>Time: 10:00 a.m. |

Defendant Benjamin Meir hereby files his Sentencing Memorandum.

## I.   INTRODUCTION

Benjamin Meir, 32 years old, is before the Court for sentencing on his charges of Possession with intent to distribute Ketamine.

Mr. Meir is very sorry and apologizes to the Court and the United States for his involvement in this offense. He has shown acceptance of responsibility and remorse as verified by the attached letter from his counselor at the Beit T'Shuvah recovery program, Michael Rosenfeld. *See* Exhibit A.  Mr. Meir's mother and father remain supportive during the instant offense as well.  Mr. Meir has resided at Beit T'Shuvah since his release and is doing well in his recovery.

1.

The defense agrees with the government's recommendation of five years of probation with the standard terms of probation including drug testing and treatment as directed by the probation officer.

## II. SENTENCING FACTORS

Title 18 U.S.C. § 3553(a) directs the sentencing court to consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the [advisory] sentencing [guideline] range[;]

(5) any pertinent policy statement ... issued by the Sentencing Commission[;]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

After considering these factors, the court must impose a sentence sufficient, but not greater than necessary, to satisfy the purposes of sentencing set forth in § 3553(a)(2). In making this determination, the district court may not presume that a guideline sentence is the correct one. *Nelson v. United States*, 129 S.Ct. 890, 892 (2009) (per curium). The court is also free to discount the guidelines' recommendation for policy reasons particularly where the Sentencing Commission did not, in adopting the particular guideline, fulfill its "characteristic institutional role" of acting based on study, expertise, empirical data, or national experience. See

2.

*Kimbrough v. United States*, 552 U.S. 85, 109 (2007). Ultimately, the district court must make an independent determination as to the appropriate sentence, taking into account the types of sentences available, the relevant § 3553(a) factors, and the arguments of the parties. *See Gall v. United States*, 552 U.S. 38, 49-50 (2007).

Sentencing, that is to say punishment, is perhaps the most difficult task of a trial court judge." Jack B. Weinstein, *Does Religion Have a Role in Criminal Sentencing?*, 23 Touro L. Rev. 539, 539 (2007). While there are many competing considerations in every sentencing decision, a sentencing judge must have some understanding of "the diverse frailties of humankind." *See Woodson v. North Carolina*, 428 U.S. 280, 304, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976) (plurality opinion). In deciding what sentence will be "sufficient, but not greater than necessary" to further the goals of punishment, 18 U.S.C. § 3553(a), a sentencing judge must have a "generosity of spirit, that compassion which causes one to know what it is like to be in trouble and in pain." Guido Calabresi, *What Makes a Judge Great*: *To A. Leon Higginbotham, Jr.*, 142 U. Pa. L. Rev. 513, 513 (1993); *see also Edward J. Devitt, Ten Commandments for the New Judge*, 65 A.B.A. J. 574 (1979), reprinted in 82 F.R.D. 209, 209 (1979) ("Be kind. If we judges could possess but one attribute, it should be a kind and understanding heart. The bench is no place for cruel or callous people regardless of their other qualities and abilities. There is no burden more onerous than imposing sentence in criminal cases.").

**III. DEFENDANT'S POSITION ON SENTENCING FACTORS**

**A. THE NATURE OF THE OFFENSE**

Benjamin Meir is before the Court for sentencing on one count of possession with intent to distribute Ketamine, per the Parties' plea agreement.

**B. THE DEFENDANT'S HISTORY AND CHARACTERISTICS**

Mr. Meir was born in Granada Hills, California in 1987 to David and Karen Meir. He has a sister, Natasha Meir, age 31. He recalled a comfortable upbringing with his family, with no issues with conflict or abuse. Mr. Meir's relationship with

3.

his family became strained when he began to abuse hard drugs. He began smoking marijuana and drinking at the age of 15. He experimented with harder drugs to help cope with his emotions and he began to isolate himself from his family and friends. Mr. Meir experienced anxiety and depression at the age of 16 after ending his first relationship. This triggered counseling and therapy that continued for four to five years. He was prescribed Xanax and Paxil but they were not helpful to his already altered mental and physical state. He learned and engaged in delinquent behavior. At around the same time he was taking Xanax and Paxil as a teenager, he was also using alcohol and marijuana.

Mr. Meir would benefit from continuing therapy to address the years of drug abuse that altered his life. Mr. Meir has a history of substance abuse that includes alcohol, marijuana, cocaine, opiates, heroin and methamphetamine.

Mr. Meir first received treatment at the Tarzana Treatment Center in 2008 and 2009. Later he participated in treatment at the Pasadena Recovery Center in 2013 and 2014. He then enrolled in an Intensive Outpatient Program at Kaiser in 2015. Mr. Meir enrolled in the residential drug treatment program at Beit T'Shuvah in Los Angeles.

Since his enrollment at Beit T'Shuvah on June 4, 2019, Mr. Meir has been sober. He completed Beit T'Shuvah's primary program and has moved onto the extended care phase of the Beit T'Shuvah program. He is working on completing the steps with his sponsor. He works with a therapist, a spiritual advisor and a counselor on a weekly basis. He is successfully accomplishing all the goals that his treatment team set for him.

In October 2019, Mr. Meir obtained a full time position as a sales agent with a tech startup company in Westwood. He was recently promoted to sales manager where he is in charge of hiring and & training new agents. Previously, from 2014 to 2016, he owned and operated Pacific Design Fabrics from a warehouse in North Hollywood. From 2011 to 2014, Mr. Meir worked as a server at various Los


Angeles restaurants, including Wolfgang Puck Bar and Grill and Gordon Ramsay's Fat Cow. Before that, he helped his father in his commercial real estate business.

Upon his release, Mr. Meir plans to reunite with his family and obtain employment. He sincerely regrets all of his actions that bring him before the Court.

## C. THE ADVISORY SENTENCING GUIDELINES

The Parties' plea agreement stipulated to certain sentencing guidelines and the defense agrees with the government's recommendation of probation. Therefore, the defense objects to the probation officer's guideline calculations because based on the facts of the case, the parties did not believe that those increases were appropriate. As to the warrant from Van Nuys Superior Court, the Van Nuys Superior Court had continued Mr. Meir's Van Nuys probation violation case was with the requirement that Mr. Meir complete 180 days at Beit T'Shuva, which he has done. He returns to the Van Nuys court on January 31, 2020, to show proof of his completion of 180 days at Beit T'Shuva.

The sentence of 5 years of probation in this case is reasonable given that his criminal history consisted mainly of drug-induced convictions, the fact that he has turned the corner in his recovery, and he has the support of his family and Beit T'Shuvah. *See* Shirley R. Klein et al., *Inmate Family Functioning*, 46 Int'l J. Offender Therapy & Comp. Criminology 95, 99-100 (2002) ("The relationship between family ties and lower recidivism has been consistent across study populations, different periods, and different methodological procedures."); Phyllis J. Newton, Jill Glazer, & Kevin Blackwell, Gender, *Individuality and the Federal Sentencing Guidelines*, 8 Fed. Sent'g Rep. 148 (1995) ("[T]he better family ties are maintained[,] the lower the recidivism rate,"). *See also United States v. Sayad*, 589 F.3d 1110 (10th Cir. 2009) (where defendant convicted of interstate delivery of 11 kilograms of cocaine and guidelines 57 months, sentence of probation is reasonable in part because, unlike in most cases, here strong family support which will aid rehabilitation).

In summary, Mr. Meir agrees with the advisory guidelines as stated in the plea agreement and agrees with the government's recommendation.

Respectfully submitted,

Dated: January 11, 2020

s/ Shaun Khojayan
Attorney for Benjamin Meir

# EXHIBIT A



Warren Breslow
*Executive Director,*
*Chair Emeritus*

Harriet Rossetto
*Founder, Clinical Director*

Rabbi Mark Borovitz
*Senior Rabbi*

**BOARD OF DIRECTORS**
Janice Kamenir-Reznik
*Chair*
Annette Shapiro
*President*
Lynn Bider
*Secretary*
David Ruderman
*Treasurer*
Warren Breslow
*Chair Emeritus*
Russell Kern
*Chair Emeritus*
Nancy Mishkin
*Chair Emeritus*

Lise Applebaum
Heidi Bendetson
Paul Bergman
Andrew Besser
Rabbi Mark Borovitz
Joyce Brandman
Emily Corleto
Samuel Delug
Keith Elkins
David Elston
Jon Esformes
John Fishel
Jeff Frasco
Dr. David Friedman
Mel Gagerman
Beverly Gruber
Dr. Susan Krevoy
Bradley H. Mindlin
Jennifer Morgen
Adam Nimoy
Donald S. Passman
Heidi Praw
Harriet Rossetto
Neil Solarz
Ronnie Stabler
Brad Wiseman

**FRIENDS OF**
**BEIT T'SHUVAH**
Sheldon Appel
Pat Train Gage
Herb Gelfand
Jeffrey Glassman
Salli Harris
Roberta Holland
Meryl Kern
Blair Belcher Kohan
Diane Licht
Virginia Maas
Cheri Morgan
Susan Neisloss
Joan Praver
Avi Reichental
Jan Rosen
Richard Schulman
Lisi Teller
Jill Black Zalben

November 14, 2019

The Honorable Judge Cormac J. Carney
United States Courthouse
Courtroom 7
350 West 1st Street
Los Angeles, CA 90012

Re: Benjamin Meir, Case No. 19CR00170

Your Honor,

This letter is being written to respectfully request and recommend waiving custody time indicated in the above referenced case pertaining to Benjamin Meir, or that he be mandated to our program in lieu of any incarceration. In addition, and in support of this request, I am writing to inform the Court and Counsel of the progress that Benjamin has made since his admission to the Beit T'Shuvah Residential Treatment Center on June 4, 2019.

Beit T'Shuvah is a long-term residential facility established in 1986. It is a drug free environment that combines group and individual therapy, 12-step recovery participation, and Judaism to facilitate abstinence from a variety of addictive, compulsive, and criminal behaviors. We provide a range of services including substance abuse treatment, criminal offender rehabilitation, psychological assessment and counseling, vocational rehabilitation, and spiritual counseling

The most important component of the Beit T'Shuvah faith-based model of recovery is a spiritual community that utilizes the path of Judaism to promote self-acceptance, self-worth, and spiritual values. It is through this community of study, meditation, prayer, and discussion that our residents transition from behavior patterns of arrogance, failure, isolation and entitlement to life goals of accountability, service and gratitude. Residents look to religious archetypes, shared heritage, and communal wisdom for the strength to alter their behavior.



*Beit T'shuvah is a community partner of The Jewish Federation.*

Beit T'Shuvah Residential Treatment and Prevention Center | 8831 Venice Boulevard | Los Angeles, CA 90034
p.310.204.5200 | f.310.204.8908 | www.beittshuvah.org | info@beittshuvah.org

The primary care portion of the program is highly structured with residents under 24-hour supervision. As residents progress through the program, they are gradually given more responsibility and freedom based on their progress in the program. The primary program is comprised of process and therapy groups, individual counseling & therapy, 12-step programming, religious services, and groups focused on Jewish ethical and spiritual values. Each resident, upon admission, is assigned a program counselor, a therapist, and a spiritual counselor. Residents typically remain at Beit T'Shuvah for a period of six months to one year, and they are tested regularly for the presence of drugs and alcohol. It is Beit T'Shuvah policy to notify the Court and/or Probation should a resident fail to remain in compliance with program requirements.

Since his admission to the Beit T'Shuvah primary care program, Benjamin engaged in all facets of the program. He has participated in his assigned groups and he has met regularly with his program counselor, therapist, and spiritual counselor. He averages approximately three 12-step meetings per week and working steps with a 12-step sponsor. To date, all drug and alcohol screens have been negative.

Benjamin has now become employed in the IT Department of Public Business Reputation Management (1100 Glendon Ave. 17th Floor, Los Angeles, CA 9002), while remaining a primary care resident of Beit T'Shuvah, maintaining weekly meetings with his counselor, therapist and spiritual advisor and attending at least three 12-Step Meetings per week, and working with his sponsor. Benjamin is currently working on Step 4. All three members of Benjamin's treatment team report that he has made real progress in his recovery in appropriate stages, reporting in unanimity that he is garnering an increased understanding of the factors at play in his unhealthy life choices. They also report that he is learning to apply spiritual and therapeutic tools to alter unhealthy impulses and behaviors.

To quote Benjamin's spiritual advisor, Rabbi Kerry Chaplin "*Ben is growing into a way of looking at the world in which he is deeply connected to community and the people around him. Ben has expressed*

*that he feels not only more fulfilled by living in this way, but even grateful to have a positive impact on the people around him".*

Benjamin's Counselor, Bradley Elkins, reports that *"Benjamin works in IT, a passion of his, and his job consists of helping with software as well as making sure the servers are running effectively. He attends a minimum of three 12 step meetings a week, and meets with his sponsor on a weekly basis. He meets with me as well as his spiritual advisor, and therapist every week, and maintains his house obligations such as attending services. He has grown substantially in his time in treatment. In addition to building a strong sober support network, he has begun to evaluate how his actions are perceived in the communal setting. He is now receptive to constructive feedback, and has shown a willingness to make compromises in order to fulfill his obligations. He is learning how to balance his recovery routine with his job. He would greatly benefit from having more time to build some general life skills. Although he has come a long way, he still has more work to do in terms of building self-awareness and balancing all of his obligations".*

Benjamin's therapist, Benjamin Edwards, also reports *"I have been working with Ben since June of this year. Ben has worked on taking a deeper look at his personal history and has been able to make connections as to how his unprocessed fears have negatively impacted his choices in life. Ben has been able to take responsibility for his actions while simultaneously developing a positive vision of the man he wants to be and the steps he is willing to take to continue on the path towards becoming that man. I am encouraged by the work that Ben has done, thus far, in therapy. I believe that he should continue to stay in treatment and that he is on the right path towards assimilating back into society as a productive and positive member of the community".*

It is important to emphasize that Benjamin has truly acknowledged personal responsibility for his past mistakes in a meaningful way, and we find Benjamin authentic in his ability to take ownership of, and express remorse for the pain caused to others and himself as a result of his actions.

In view of Benjamin's continuing progress, I respectfully ask the Court to consider waiving the custodial time that is being sought in Benjamin's case. While we at Beit T'Shuvah do understand the value and necessity of incarceration when indicated, it would seem counterintuitive to remove Benjamin from the pro-social environment of Beit T'Shuvah and his workplace by placing him in a custodial environment. His ability to cope with the stress of working with the help of remaining under treatment at Beit T'Shuvah is an integral part of his recovery process. Moreover, it is difficult to see how society benefits by placing Benjamin in custody, thus interrupting his working on himself at Beit T'Shuvah and as a collateral consequence, losing his ability to remain an employee in a position which he is passionate about, leaving him with no support system to help him enhance his overall recovery while being isolated in a very harsh environment.

In closing, I will simply add that although Benjamin Meir has more work to do in his recovery process, he is not the same man who entered Beit T'Shuvah on June 4, 2019. He has become a more mature man who takes responsibility for his actions and continues to work diligently to transform himself into a sober and responsible member of society. Allowing Benjamin to remain in uninterrupted treatment while maintaining his employment can only solidify this transformation.

Should you have any further questions or concerns, feel free to contact me at (310) 204-5200.

Respectfully Submitted,

Michael Rosenfeld
Alternative Sentencing Advocate